the literal meaning of particular phrases; and in this case it was clearly the testator's intention to create a vested remainder: Provenchere's Appeal, 67 Pa. 463; Middleswarth v. Blackmore, 74 Pa. 414; Schott's Estate, 78 Pa. 40; Finlay v. King, 28 U. S. 346; Phillips v. Davies, 92 N. Y. 199.

No argument nor printed brief for appellee.

PER CURIAM, May 20, 1909:

The decree is affirmed on the adjudication of the auditing judge, approved by the court in banc.

---

# Randal v. Gould, Appellant.

*Evidence—Proof as to insurance—Effect on jury—Notice.*

1. A party sued for damages may not be put to the hazard of a loss because a jury believes him to be protected by insurance, and reference to such insurance is improper; but proof of a radical point, such as notice of a defective title, should not be excluded because it involves the showing collaterally of the minor and irrelevant point of title insurance.

2. On the trial of an action of ejectment a motion was made to withdraw a juror upon an offer of proof made by the plaintiff that the defendant had not only bought with notice of the fraud in his title, but had paid an extra premium to a title insurance company for indemnification against it. The jury was taken out and argument was had on the motion. The motion was overruled, and the offer was withdrawn. The jury was then brought in. *Held*, that the trial court committed no error in refusing to withdraw the juror.

*Practice—Trial—Charge.*

3. A trial judge cannot be convicted of error in controverting in his charge a manifestly fallacious argument of counsel.

*Ejectment—Notice—Fraudulent title.*

4. Defendant in ejectment is charged with notice of the fraudulent nature of his grantor's title, where it appears that he had participated, prior to his taking title, in legal proceedings in which the question of the fraudulent character of the title was raised.

*Mortgage—Mortgage bond—Married woman—Invalidity of mortgage.*

5. A bond executed by a married woman may be valid, although a mortgage accompanying it as collateral, is void for nonjoinder by the husband.

*Judgment—Collateral attack—Ejectment.*

6. Where the plaintiff in an ejectment claims title under a sheriff's deed, and it appears that the judgment on which the execution issued which resulted in the deed was unappealed from, the defendant in the ejectment cannot in that proceeding attack the validity of the judgment.

*Execution—Vend. ex.—Notice to personal representatives.*

7. A vend. ex. issuing after the death of the defendant in the execution without notice to her representatives as required by the Act of February 24, 1834, sec. 33, P. L. 70, is not invalid, if it appears that the defendant had conveyed her land to another before her death, although fraudulently, as against creditors, and that her grantee had come into court and opposed the vend. ex.

Argued March 22, 1909. Appeal, No. 366, Jan. T., 1908, by defendant, from judgment of C. P. No. 2, Phila. Co., June T., 1906, No. 3,475, on verdict for plaintiff in case of Harry L. Randal v. Isador M. Gould. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Ejectment for real estate at 247 South Second street, Philadelphia.

At the trial the jury returned a verdict in favor of the plaintiff.

On a rule for a new trial and motion for judgment non obstante veredicto, WILTBANK, J., filed the following opinion:

This case has been twice tried and twice ably reviewed before us on rules, and we have been assisted in its examination by the industry of counsel inspired by their sense of its importance to two innocent parties. Either the plaintiff or the defendant must eventually find himself the irresponsible victim of a combination of three persons, who, according to the finding of the jury at the last trial, acted with the intention of defrauding one or the other of them. If a fraud was consummated, it was necessarily upon one or the other, either in

depriving Randal of the fruits of his judgment, or in passing off upon Gould a title in jeopardy on account of a cloud upon it.

After the first trial we considered the evidence, and made the rule absolute on the ground that the judge at nisi prius had erred in ruling that, no matter what the fraud, if any there were, the defendant had taken title without having been put upon notice of it. At the second trial it was conceded that the question of notice arose upon documentary evidence, found in records and other instruments, and that this evidence was for the court in respect of its significance as to notice; that it involved, therefore, a question exclusively of law, and could not be left to the jury for a finding of its legal effect. The trial judge ruled that it showed notice to Gould, and to this ruling he sealed a bill. We think that this ruling was not error.

The evidence, then, of the fraud has been again considered by us. The jury have found that it was the plaintiff who was defrauded, and in doing so have established facts, of which a concise statement is as follows: On May 8, 1902, one Mary C. Bell, became indebted in $4,000 to the plaintiff, Randal, and executed and delivered to him a bond with warrant for the amount. This bond she attempted to secure by a mortgage of the real estate in dispute, the title to which was in her, but she sealed, signed and delivered her mortgage without joinder of one Alonzo Bell, her husband, then living. It was duly recorded, and shortly after its delivery one Watson, who was then and had been before the professional adviser, as a member of the bar, of her and her husband, instructed the couple that the mortgage was irregular and invalid. Before the payment of the first six months' interest fell due, Watson and the Bells arranged a sale of the land with one Fisher, a half-brother of Alonzo Bell, in order to avail themselves of the invalidity of the mortgage, and to pass the land beyond the reach of Randal in the event of his using the warrant of attorney attached to his bond. The land was thus, as they hoped, by deed of August 18, 1902, put beyond the reach of a lien of a judgment in favor of Randal. The urgency arose upon the apprehension of the two actors that if they post-

poned their step until Randal should have demanded his first installment of interest, they would, as the result of Randal's alarm, find Mary Bell's land bound by a judgment on her bond, and thus Randal might collect the money lawfully due him.

The grantee, Fisher, was a man without an estate. He was a laboring man, some time a motorman, a farm hand, and finally the owner of a small tract for the cultivation of garden products and fowl. He supported a family, on wages and peddling which at no time, according to his showing, exceeded $500 a year. He had no bank account; but about three months before his purchase of the land in question he had saved something under $500; he carried most of his savings "in his clothes," and he held the rest in a small tin box at his home. It was from these receptacles that he produced to Watson at the settlement $2,000 to be paid to the Bells. His purchase secured to him a store in this city worth at least three times that amount, and which, after the lapse of three years and ten months, he conveyed to the defendant Gould for over $6,000. His deed was executed June 28, 1906. He sold to Gould, he explained, because during his ownership the investment had brought him nothing. He had no knowledge of a negotiation for a sale to Gould till a day or so before he executed his deed, which he did at the instance of Bell, and he did not know what was the price of the land till, at that execution and under the guidance of Watson, he took part of the purchase money, and received the impression that Watson must have accounted to his satisfaction for the balance. Fisher was silent, inactive, uninformed and contented during the term of his ownership, a period as already stated of nearly four years.

Alonzo Bell had retained during that period the control of the real estate. There was some evidence, although only slight, that when the Bells conveyed to Fisher they took from him and his wife an eventually unrecorded reconveyance of the property. This aspect of the case was presented upon the testimony of a member of the bar and notary public, who acted officially at the instance of Watson; and it was argued for the plaintiff that the probability presented was strengthened by other proofs. On two consecutive days Watson, who

was on the same floor of the office building in which the notary practiced, took Bell and wife and Fisher and wife for the acknowledgment of three deeds before the notary, and for the certificate of the latter. At the trial it was conceded that one of these deeds was that from the Bells to Fisher; Alonzo Bell testified that another was a conveyance by him and his wife of other land owned by them; the difficulty of identification attached to the third deed; this was executed by Fisher and wife, but the notary's record in showing this much, did not show the grantee or grantees. Bell testified to his ignorance of this deed. Fisher said it might have been made in some dealing of his and his wife's about an inheritance of hers in Gettysburg. Watson, who had introduced the parties to the notary, with admittedly two, and, by tacit admission, three deeds, was emphatic in disclaiming knowledge. The notary testified that to the best of his recollection the third deed was a deed from Fisher and his wife to Bell. The trial judge warned the jury to reach no hasty conclusion on this point.

Our narration must include details of this character in order that we may justly dispose of certain reasons for the rule for a new trial urged with earnestness at the argument. That Bell managed the property during Fisher's ownership, received the rents, directed the repairs and paid taxes and other charges, was not seriously disputed. That he did this as owner was, however, earnestly denied, and he produced a power of attorney from Fisher. All of the issues of fact were skillfully discussed, and the findings reached by the jury were the result, not only of the plaintiff's proofs, but also of those of the defendant, the latter tending to contradict and annul the tendency and value of the former, and the jury deciding after weighing them.

We find the verdict not against the weight of the evidence. In our opinion, if there was error at the trial, it lay in certain rulings on three, or some of three, points. These embrace the refusal of the court to withdraw a juror; the charge concerning the alleged character of the third deed testified to by the notary; and the finding of notice to the defendant.

In behalf of the defendant the court was moved to withdraw a juror upon an offer of proof made by the plaintiff, that the defendant had not only bought with notice of the fraud in his title, but had paid an extra premium to a title insurance company for indemnification against it. Upon the motions being presented, the court ordered that the jury be taken out; and an argument proceeded in their absence. This resulted in an overruling of the motion and the sealing of a bill for the defendant. The offer was withdrawn and the jury were then brought in. The primary object of the offer was to show by proof of a high order that the defendant had been put upon notice, not only of the invalid and ineffective mortgage, notice of which would have amounted to nothing, but also of the attempt of Bell and his wife to make away fraudulently with the property, to defeat Randal on an execution under his judgment. That a party sued for damages may not be put to the hazard of a loss because a jury believes him to be protected by insurance, and therefore safe, has been decided in many forms of action; and the courts have deprecated mention of an insurance in a general way, and have rebuked counsel who have gone farther, and founded an argument upon it in order to win in a contest against the assured: Lenahan v. Pittston Coal Mining Co., 221 Pa. 626.

But attention to the situation at this trial must show the inapplicability of the principle. It may be doubted that insurance might not have been shown here, because the primary inquiry was as to notice, and insurance was most persuasive evidence of this. Proof of the radical point of notice should not have been excluded merely because it involved the showing collaterally of the minor and irrelevant point of insurance. This was not a valid reason for exclusion. The plaintiff was entitled to that which made heavily in his favor and without which he might have been prejudiced through a substantial denial of justice, and on the other hand the jury could have been instructed to disregard the other significance of the proof. This would have been the familiar practice of admitting evidence specially, for a stated purpose, to which the court peremptorily restricts it in view of its capacity to prove some-

thing else, not admissible on the issue: Sheaffer v. Eakman, 56 Pa. 144. The withdrawal of the offer left the defendant free to object only to the use of the phrase, payment for insurance, in the hearing of the jury, and this objection did not show good cause for any adverse action of the court. This was the more clear because the insurance company's investigation of the title had been under discussion by both sides as the trial advanced, and its officers and papers had been extensively examined.

The second point grew out of the charge of the court concerning the alleged character of the third deed: that executed by Fisher and his wife and acknowledged before the notary Lewis. This deed, according to the best recollection of the notary, was from Fisher and wife to Bell; but Fisher testified that it may have been in settlement of some matter of the estate of his wife's father, a late inhabitant of Gettysburg. His manner and the vagueness of his testimony were criticised by the plaintiff's counsel in his summing up, and in reply the counsel for the defendant met the strictures offered, and also urged the argument that it had been the duty of the plaintiff to investigate the subject before charging Fisher with an untruth, or at least a weak pretense. Inasmuch as Fisher had not been called by the defendant at the former trial, and the plaintiff had not had notice of his story, the trial judge could not permit the argument to prevail, that the plaintiff could have learned in Gettysburg whether or not Fisher and his wife had executed the deed referred to.

It was also proper for him to controvert an argument that, even at the stage by that time reached, an investigation might yet be inaugurated by the plaintiff, and upon ascertainment of the unsubstantiality of the story a new trial might be moved for, and redress thus secured in the manner usual upon the discovery of proof after verdict.

Apart from the suggestion that proof of a negative was within reach, and might serve the plaintiff later if the jury found for the defendant, the argument was exceptionable as glancing at relief to the plaintiff in future action of the court, and as in its enlargement too zealously upholding the shame-

less partizanship of Fisher. The court charged, therefore, with some vigor on the point, but, as we find, not with a greater degree of emphasis than was required, according to the accepted measure of the duty of a judge.

The weight of the evidence was with the plaintiff on the issues of fact, and a verdict the other way might have awakened our solicitude. The expressions of the charge on the point raised were timely, and we fail to find in them any reason for directing a third trial of a long and exhaustively presented contest.

The third point for examination is the finding of the court that the defendant, Gould, had been put upon inquiry before taking title. It was agreed at the trial that this was a question of law arising upon documents in evidence, and the court charged that notice was shown. The error assigned is, not that the question should have been left to the jury, but that, resting as it did with the court, it should have been decided the other way. The defendant argues that the documents did not show notice to him.

The documents showed how the defendant took his title. It appears that when Randal had obtained his judgment against Mary C. Bell, which was had in the court of common pleas of this county No. 5 to September Term, 1904, No. 1,224, writs of execution duly issued from that court, and a vend. ex. went out returnable to the first Monday of May, 1906. Under this writ the defendant bought the property and paid down the stipulated deposit of $50.00. He failed to comply with the terms of the sale, and on June 27, 1906, he petitioned the court to order the return of his deposit, on the ground that, whereas the property had been sold on Randal's writ as that of Mary C. Bell, in fact Mary C. Bell had then no interest therein.

This information he acquired upon examination of the record on which the sheriff had sold. That record showed that Fisher, who, as already stated, had taken title from the Bells August 18, 1902, had petitioned the court on April 30, 1906, to stay the execution of Randal's vend. ex. on the ground that Mary C. Bell had then no interest, but had previously con-

veyed her title to him; and the record also showed that Randal had on May 3, 1906, filed an answer thereto, setting forth that the deed to Fisher had been executed and delivered fraudulently, and with intent to escape the lien of a judgment apprehended under the bond and warrant which Randal held. This scheme, the answer averred, was conceived and executed with the knowledge of Fisher.

The same record also showed that on June 27, 1906, which was, as the dates show, prior to the petition filed by the defendant Gould above referred to, Fisher had filed a bill against the plaintiff Randal, of record in the same court and of the same term and number for an injunction to restrain Randal from proceeding with his execution setting up the exhaustion of the title in Mary C. Bell by her conveyance to Fisher. This bill was filed by the attorney of Fisher and the attorney of the defendant Gould. An affidavit by way of answer to this bill was on June 29, 1906, filed by Randal, setting up the fraudulent transaction; but between the dates of the filing of the bill and of the coming in of the affidavit, that is to say, on June 28, 1906, Gould had taken his deed from Fisher.

Gould took his deed from Fisher upon the faith of a title insurance policy of the Equitable Trust Company, stipulating to indemnify him from actual loss in the premises. The application for this insurance was made by Gould's attorney, and it exhibited as foundation of risks, "objections to title known, Randal v. Bell, Common Pleas 5, Sept. Term, 1904, No. 1224, or rumored."

In the meanwhile Randal had proceeded under an alias vend. ex. of June 2, 1906, and had bought in the property, obtaining the sheriff's deed therefor on July 16, 1906. On this deed Randal depended at the trial.

Upon this evidence, as we have already said, we could find no error in the charge of the trial judge that Gould had been put upon inquiry of the alleged fraud of certain of his predecessors in the title.

Two other points were urged upon us: That the bond on which Randal had secured his judgment was void because the mortgage which was given to fortify it was a nullity, and

that the vend. ex. on which the sale was made by the sheriff was also void because it had gone out after the death of Mary C. Bell without notice to her representatives: Act of Assembly February, 24, 1834, sec. 33, P. L. 70.

These points need not be discussed. The judgment of a court of concurrent and equal jurisdiction has been relied upon by the plaintiff, and it is not competent for us to go behind it to inspect the bond. As the foundation of the plaintiff's case that judgment stands unappealed from and valid. We may note, however, that in any event an invalidity of the mortgage could not nullify the bond. This latter expressed and established the obligation of a woman who, under the law, was competent to execute and deliver it. A futile effort on her part to support it by the pledge of her land was a secondary and collateral circumstance not bearing in any degree upon the liability primarily established: McCoy v. Niblick, 221 Pa. 123; King v. Grannis, 29 Pa. Superior Ct. 367.

An analogous criticism may be made of the impeachment here of the process of another court. No appeal lies to us from that court, and the presumption of regularity in the execution which arises upon the acknowledgment and delivery of a sheriff's deed is not rebutted by any evidence in the record of the death of Mary C. Bell before vend. ex.; we do not think that it is expedient to enlarge upon this situation because of the paramount consideration that, no matter what the conclusion as to the regularity of the vend. ex., it must be admitted that the act of February 24, 1834, does not apply, because at the time of her death Mary C. Bell was not the owner of the land, and her deed to Fisher, whether within the statute of Elizabeth or not, could not have been denied by her if living. She had passed her title irrevocably, and her personal representative would have had no standing to oppose the execution. If her deed had constituted Fisher her trustee, which is the utmost that could be claimed by an avoided or defrauded creditor, not the less the legal title was in him, and he had had full notice in the premises and had come into court to oppose the vend. ex. as has already been shown from the record, and

thus had had his day: Reichart v. Castator 5 Binney, 109; Murphy v. Hubert, 16 Pa. 50; Colborn v. Trimpey, 36 Pa. 463. Cases applying by analogy being decisions upon the effect of the thirty-fourth section of the act of February 24, 1834, are McCormick v. Skelly, 201 Pa. 184; Smith v. Grim, 26 Pa. 95; Drum v. Painter, 27 Pa. 148; Irwin v. Hess, 12 Pa. Superior Ct. 163.

The rule for a new trial is discharged.

The motion for judgment non obstante is overruled.

*Errors assigned* were various rulings on evidence and instructions.

*V. Gilpin Robinson*, with him *B. I. DeYoung*, for appellant.

*Stanley Folz*, with him *Leon H. Folz*, for appellee.

PER CURIAM, May 20, 1909:
The judgment is affirmed on the opinion of the court below.

---

# Sloan, Appellant, *v.* Philadelphia & Reading Railway Company.

*Negligence—Railroads—Grade crossings—Case for jury.*

1. Where the plaintiff in an accident case makes out a prima facie case by his own testimony, the case should be submitted to the jury, although subsequent portions of plaintiff's own testimony may be at variance with his first account.

2. Where in a grade crossing accident case the plaintiff testifies that on approaching the track he stopped and his view being partially obstructed in one direction he got out of his carriage, walked forward to the track, looked in both directions and saw the track perfectly clear and then went back, got into the carriage and drove forward, looking and listening as he did so, his case is for the jury, even if subsequent portions of his testimony are at variance with this account.

3. The credibility of testimony in general is for the jury and the remedy for a perverse verdict or one against the weight of the reason-